E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
08/27/2020 1:38:03 PM
Linda Myhre Enlow
Thurston County Clerk

SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN THE COUNTY OF THURSTON

| | |
|---|---|
| JACK POTTER, <br><br>       Plaintiff, <br><br>       v. <br><br> CITY OF LACEY, and KEN SEMKO, <br><br>       Defendants. | NO.    20-2-01951-34 <br><br> COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT |

The Plaintiff, Jack Potter, by and through his attorneys of record, alleges as follows:

## I.    INTRODUCTION

The City of Lacey has enacted laws which prevent many homeless people who live in their vehicles from living in Lacey because there is no place within the city that they can park their vehicles for longer than four hours.  Lacey Municipal Code (LMC) §10.14.020(B).

Jack Potter lived in Lacey from 1997 until 2019 when Lacey's laws targeting the homeless living in their vehicles went into effect.  In 2019, he was living in his recreational vehicle.  Potter was parking his vehicular home in the parking lot behind Lacey City Hall.  On October 4, 2019, Lacey police officers ordered Potter and the other homeless people living in their vehicles who were parked in that lot to remove their vehicles by October 7, 2019.  Potter did not remove his vehicle.  On October 7, 2019, Lacey police officers issued a citation against Potter, and on October 8, 2019 told Potter that if he did not remove his vehicle, it would be impounded.  Potter left the lot and ceased parking it in Lacey, Washington.  Thus, the City of Lacey banished Potter from the city where he had lived for the preceding 22 years.

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

This lawsuit challenges Lacey's laws as unconstitutional.  Potter seeks declaratory and injunctive relief so that Potter can once again live in Lacey, and damages from the City for the period of time that he was unlawfully banished from the City.

## II.    PARTIES

1.     Jack Potter is a resident of Thurston County, Washington.  Though homeless in the sense that he does not have shelter in the form of a house, apartment, or similar fixed place of abode, he lives in his Travel Trailer and he regularly lives in Thurston County because he spends his days and nights in Thurston County.

2.      The City of Lacey is a municipality and a political subdivision of the State of Washington.

3.     Ken Semko is the Chief of Police of the City of Lacey.

## III.    JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter.

5.     This claim arose in Thurston County, Washington.

6.     The Defendant City is located entirely within Thurston County, Washington.

7.     Venue properly lies within Thurston County, the County where the City of Lacey lies.

## IV.    OPERATIVE FACTS

8.     Jack Potter was born in Illinois in 1957.

9.     He attended grade school while living in Alaska and California.

10.     He attended Junior high school while living in Lompoc, California.

11.     He attended high school while living in Spokane, Washington and graduated from Joel E. Ferris High School in 1975.

12.     Potter was a victim of childhood sexual abuse.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 2

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

13.     Later in life he was diagnosed as suffering from PTSD which was caused by his childhood sexual abuse.

14.     He has also been diagnosed as having ADHD and a bipolar disorder.

15.     After graduation he joined the United States Navy at the age of 17.

16.     He sustained an injury and received a medical discharge from the Navy.

17.     He returned to Spokane and attended community college there.

18.     He moved to Tacoma and lived there.

19.     Sometime in the early 1980's he moved back to the Spokane area.

20.     In 1985 he moved to western Washington.

21.     In 1986 he joined the United States Army.

22.     He served 1 year, 8 months and 22 days in the Army and was honorably discharged in August of 1988.

23.     He was stationed in Germany during his service in the Army and continued to live in Germany after his discharge, until approximately 1993 when he returned to the United States and went back to Spokane to live.

24.     He then moved to Texas and lived there for about four years before moving back to Washington State in 1997.

25.     He lived briefly in Olympia and then sometime shortly thereafter he moved to the City of Lacey.  He moved partly because Lacey had a laundromat he could use to do his laundry and neither Olympia nor Tumwater had a laundromat.  Potter also thought Lacey was cleaner than Olympia and better run.

26.     Except for a period of approximately 18 months in the years 2012 to 2014, Potter lived in Lacey, Washington for 22 years, from 1997 until October of 2019.

27.     When Potter first came to Lacey in 1997 he moved into a 4-plex on Dogwood Street in Lacey.  This is where he met Vicki Sprague.  She moved from Illinois to Washington.  She moved in next door to Potter.  Sprague and Potter were together for the raising of three

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT – 3

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

POT011-0001 6113818

1   grandchildren while living in Lacey.  They began a relationship that lasted 23 years until

2   Sprague's death in 2019.

3           28.     In the late 1990's Potter registered to vote in Lacey, Washington.  He voted

4   regularly in Lacey until he went to prison in 2014.

5           29.     For over 20 years Potter has registered his vehicles using his Lacey address.

6           30.     Potter got a driver's license using a Lacey Post Office Box address.  He first got

7   a Lacey Post Office Box in 2005.  He had one box from 2005 until 2014, and then a different

8   box after he finished serving time in prison.  Potter's driver's license still bears a Lacey,

9   Washington Post Office Box address.

10          31.     There were two restaurants in Lacey that Potter and Sprague liked and often ate

11  at:  Suffria's and Appleby's.

12          32.     Potter has been receiving SSI disability benefits for roughly the last 15 years.

13          33.     Currently Potter receives a monthly SSI disability payment of $1132.  That is all

14  he has to live on.

15          34.     Potter has been diagnosed as having high blood pressure and high cholesterol.

16  He takes medications for these conditions.

17          35.     Potter suffers from angina.

18          36.     He was diagnosed with testicular cancer in 2015.

19          37.     In 2018 Potter learned he needed a pacemaker and he got one implanted at the

20  Western State Medical Center.

21          38.     His health is monitored by a physician whom he sees at the Veterans'

22  Administration Hospital in American Lake.

23          39.     He also has a primary care doctor at the Lacey Medical Center that he has seen

24  over the past two years.

25          40.     For a period of time Potter lived in a double wide trailer at the Coach Post Mobile

26  Home Park in Lacey.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 4

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

41.     Potter found employment at the Furniture Store located in Olympia, Washington.

42.     Potter was arrested in 2013 and placed in Thurston County Jail.  He remained in Thurston County Jail for about 15 months.

43.     On May 12, 2014, Potter entered a guilty plea to Assault 3 with Sexual Motivation.

44.     On June 9, 2014, Potter was sentenced to serve 20 months in prison.

45.     Potter was released from prison sometime either in late 2015 or early 2016.

46.     Potter attended meetings of the Lacey City Council in 2016 and in 2018-19.

47.     Potter bought a GMC Class C Dodge Caravan RV from his mother and lived in that for a while.

48.     Potter and Sprague also lived with Mike Hutton at his house in Lacey for a period of time.

49.     Potter and Vicki moved out of the Hutton house on April 13, 2016.  At that point in time, Potter became homeless.  He spent that night in his Hyundai vehicle in the Walmart parking lot in Lacey.

50.     A few days later Potter sold the Hyundai back to Vicki and bought a 1996 Chevy Tahoe.

51.     On January 16, 2016, Potter formed the Veterans' Christian Charity, a nonprofit corporation.  The mission was to get homeless veterans Warm, Safe and Dry.

52.     On November 20, 2016, Potter took possession of the two story home at 6828 Martin Way E, Lacey, Washington, and began operating the Veterans' Christian Charity's homeless outreach program out of that building.  With the permission of the owner, Marvin Kaufman, Potter ran the outreach center rent free for six months.  Potter also lived in the outreach center.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 5

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

53.     The VCC provided showers which the homeless could use, and a kitchen.  The VCC hosted a dozen homeless men and women and offered them three meals a day.  Breakfast was self-serve, lunch was bag lunches and dinner was a hot meal.  There were appliances where the homeless could wash their clothes.

54.     Potter went before the Lacey City Council and requested money so that the VCC could operate a warming center.  The City Council denied his request.

55.     Potter solicited donations from private citizens and businesses and he raised enough money to start a warming center.  His fundraising led to his having contacts with more than 100 Lacey business owners and operators.

56.     In March of 2017, VCC stopped operating a Warming Center and began operating a thrift store. All of the revenue raised from the sale of donated furniture went to the VCC's mission of helping the homeless.  The VCC operated the thrift store until May of 2018.  By March of 2018, Potter was the only one who was living on the premises.  But by that time there was not enough room for all the donated furniture.  The owner, Marvin Kaufman, gave Potter until the end of April to empty the premises of all the furniture.  On May 4, 2018, the VCC officially closed its doors.

57.     In early April of 2018, after Potter was released from the hospital where he got his pacemaker, Potter bought an unmotorized 23-foot travel trailer in Tacoma.  Potter used his Chevy Tahoe to pull the trailer and drove it to Lacey.  Potter began living in the travel trailer.

58.     He parked the Tahoe and the trailer in various locations, staying most often on Woodland Square in Lacey, Washington, and in the park and ride parking lots.

59.     When the Walmart in Lacey stopped allowing "over-night parking" by homeless people who were living in their vehicles, Potter started parking it in Lacey in parking lots for Hobby Lobby, Capital Christian Center, Office Depot, Fred Meyers, Shopko and Burlington Coat Factory.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 6

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

60.     Potter moved his RV to a bare piece of property behind the Mayan Restaurant in Lacey and was able to stay there for a couple of months.  There were other people living in RVs there but when one of them brandished a weapon all the RVers got kicked out.  Potter and Vicki moved to the Hobby Lobby parking lot in Lacey.

61.     Potter got in a dispute with a woman in the Hobby Lobby parking lot and got arrested for harassment.  He spent less a day in jail before he bailed out.  The charge was dropped 3 months later.

62.     Potter moved his RV to the Woodland Square Loop Parking lot.

63.     In the winter of 2018-19, police knocked on the RV door and said he was not allowed to park there any longer.  They told Potter that Dave Snyder sent the police to roust the RVers out.

64.     One morning in the summer of 2018, a Lacey Police Officer knocked on the RV door.  Potter had been parked at Shopko for nine minutes.  When Potter answered, the officer told Potter he could not park there.  Potter asked where he could park and Officer Ficek said there were no "no-parking" signs in the parking lot behind the Lacey Public Library.

65.     Potter and Sprague then moved their RV to the parking lot behind the Lacey Police Station (the street address is 20 College Street, S.E., Lacey, Washington).

66.     The next morning Sgt. Brimmer came and knocked on the RV door and spoke to Potter.

67.     Potter parked his mobile home in the Lacey City Hall parking lot in May of 2019 and lived there continuously until October 8, 2019.

68.     On June 13, 2019, the Lacey City Council enacted a no camping ordinance which bans people from setting up tents and mobile homes in public places.  The law authorizes punishment of up to 90 days in jail or a $1,000 fine, or both, for violation of the law.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 7

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

POT011-0001 6113818

69.     On August 6, 2019, the Lacey City Council met at City Hall.  At that meeting the Council discussed plans to open an approved city parking lot where the vehicle sheltered homeless could legally "park" and continuously reside.

70.     On September 12, 2019, the Lacey City Council enacted ordinance No. 1551 which amended LMC 10.14.020 so as to limit the parking of any mobile home, motor home, trailer, camper or recreational vehicle on public property to no more than four hours. (Copy attached as Appendix A).

71.     Potter attended that City Council meeting and spoke in opposition to the enactment of the ordinance.  He explained that he was a homeless vet and that he was living in his vehicle.  He explained that he needed to be able to park in one spot continuously because he needed to sleep in his vehicle, and that he could not constantly be moving from one parking spot to another every few hours.

72.     Enforcement of Ordinance No. 1551 did not begin until October 2019.

73.     On October 4, 2019, Lacey police informed people living in RVs parked in the City Hall parking lot that they would have to move by Monday, October 7, 2019.

74.     Ordinance No. 1551 enacted LMC 10.14.040 which makes violation of 10.14.020 an infraction punishable by a fine of $35 and which also authorizes the impoundment or removal of any vehicle found to be in violation of LMC §§ 10.14.010, 10.14.020 and 10.14.030.  (Copy attached as Appendix B).

75.     Ordinance No. 1551 enacted LMC §10.14.045 which authorizes the Lacey City Manager to develop a procedure that allows people to apply for a permit to "park" for more than 4 hours on public property. (Copy attached as Appendix C).

76.     Pursuant to LMC §10.14.045, on September 27, 2019, City Manager Scott Spence adopted Policies and Procedures for the granting of Temporary Parking Permits.  (Copy attached as Appendix D).

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 8

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

77.     The City's Policies and Procedures distinguish between applicants who are "residents" and applicants who are "non-residents."

78.     The portion of the permit Policy that covers applications by "residents" is limited to a "Lacey homeowner or renter."  The Policy precludes a person who neither owns nor rents a home from being a resident of Lacey, and thus precludes all "houseless" persons from being a resident even though they may live within the city limits of Lacey.

79.     The portion of the Policy that covers applications by "nonresidents" refers to temporary permits for "a recreational vehicle operated by a non-resident."

80.     Under the "nonresident" portion of the Policy, a nonresident can apply for a permit that allows him or her to park for no more than 12 hours a day on public property in Lacey, and only in designated areas.

81.     Under the City Manager's Policies and Procedures, a nonresident temporary permit can only be issued by the Lacey Police Department.

82.     Under the City Manager's Policies and Procedures, a nonresident applicant is "eligible" for a temporary permit, if the applicant "is actively engaged with social services."

83.     Under the City Manager's Policies and Procedures, a nonresident applicant is "eligible" for a temporary permit, if the applicant has proof of "valid government issued identification, valid vehicle insurance [and] valid vehicle registration."

84.     Under the City Manager's Policies and Procedures, the Lacey City Police Department "may deny a permit" if a background check of the applicant reveals the existence of "an existing or outstanding warrant from any jurisdiction in the United States," or if the applicant is a registered sex offender.

85.     Defendant Semko is responsible for the enforcement of these Policies and Procedures.

86.     A Lacey Police Officer told Potter that he does not qualify for a permit because there is an outstanding misdemeanor warrant for his arrest.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 9

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

87.     Under the City Manager's Policies and Procedures, a nonresident who is granted a temporary permit is forbidden to have any visitors when his vehicle is parked in the designated area where he is allowed to park for up to 12 hours a day.

88.     If a nonresident permit holder violates the City Manager's policy, for example, by having a visitor, this invalidates the permit and "may render" the permittee and the permittee's vehicle "subject to the penalties outlined in LMC Section 10.14.040."

89.     On Monday, October 7, 2019, Lacey police issued a citation to Potter for violation of the new RV parking ordinance.

90.     On Tuesday, October 8, 2019, Lacey police returned to the parking lot.  A tow truck also came to the lot that morning.  A police officer told Potter that if he didn't leave, his vehicle was going to be towed away.  He told Potter that if the tow truck hitched up to Potter's vehicle, there would be no second chances and it would be impounded.

91.     Faced with that threat of impound, on Tuesday, October 8, 2019, Potter left the Lacey City Hall parking lot and he has not parked there since that date.

92.     Potter has not parked his RV anywhere within the City limits of Lacey since October 8, 2019.

93.     Since October 8, 2019, Potter has been living in his RV, but has parked his RV in locations outside the City of Lacey.  He generally parks his RV in locations within Thurston County.

94.     Vicki Sprague died on October 23, 2019.

95.     Four days later the Sprague family held a memorial service for her in Lacey, Washington.  Potter and about 50 people attended it.

96.     Under the terms of the Lacey ordinance adopted in September of 2019, there is no place in the city of Lacey that Potter can park his vehicle for more than four hours.  Since he lives and sleeps in his vehicle, under the terms of that ordinance, Potter is legally prohibited from living in Lacey, the city he previously lived in for 22 years.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 10

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# V.   CAUSES OF ACTION

## A.   Deprivation of Federal Constitutional Right to Freedom of Travel
### (First cause of action)

97.   By adopting and by enforcing laws, policies and customs that make it unlawful for homeless people living in their vehicles to live in the City of Lacey, the Defendants have deprived the Plaintiff of his right to freedom of travel guaranteed by the Fourteenth Amendment Due Process Clause contrary to 42 U.S.C. §1983.   Defendants have denied Plaintiff's federal constitutional right *not* to travel to another city or state and *not* to live elsewhere.

## B.   Deprivation of the Washington State Constitutional Right to Freedom of Travel
### (Second cause of action)

98.   By adopting and by enforcing laws, policies and customs that make it unlawful for the homeless people living in their vehicles to live in the City of Lacey, the Defendants have deprived the Plaintiff of his right to freedom of travel guaranteed by the Washington Constitution.   Defendants have denied Plaintiff his state constitutional right *not* to travel to another city within Washington State and not to live elsewhere in Washington State.

## C.   Deprivation of Rights Guaranteed by the Eighth Amendment by Imposing Banishment
### (Third cause of action)

99.   By adopting and enforcing laws, policies and customs that make it unlawful for homeless people who are living in their vehicles to live in the City of Lacey, the Defendants have banished Plaintiff from living in the City of Lacey in a vehicle shelter, and have thereby deprived Plaintiff, while acting under color of state law, of his Eighth Amendment right to be free from cruel and unusual punishments and from excessive fines, contrary to 42 U.S.C. §1983.

## D.   Deprivation of Rights Guaranteed by Washington Constitution, art. 1, §14 by Imposing Banishment
### (Fourth cause of action)

100.   By adopting and enforcing laws, policies and customs that make it unlawful for homeless people who live in their vehicles to live in the City of Lacey, the Defendants have

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT – 11

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

banished Plaintiff from living in the City of Lacey in a vehicle shelter, and have thereby deprived Plaintiff of his state constitutional right to be free from cruel punishments and from excessive fines, contrary to Washington Constitution, article I, §14.

**E.     Deprivation of Freedom of Association Guaranteed by the First Amendment by Conditioning the Right to Live in a Designated Place on Compliance with a Prohibition Against Having Any Visitors
(Fifth cause of action)**

101.     By conditioning the right of people who live in their vehicles to live in Lacey on compliance with a rule that they must not have any visitors in their vehicular homes, the Defendants, while acting under color of state law, have deprived Plaintiff of his First Amendment right to freedom of association contrary to 42 U.S.C. §1983.

**F.     Deprivation of Procedural Due Process Guaranteed by the Fourteenth Amendment by Subjecting Plaintiff to a Facially Vague Licensing Law that Vests Unfettered Discretion in Police.
(Sixth cause of action)**

102.     By conditioning the right of people who live in their vehicles to live in Lacey on obtaining a permit from the Lacey Police Department, and by vesting the Lacey Police Department with unfettered discretion to grant or deny such a permit, the Defendants, while acting under color of state law, have deprived Plaintiff of his Fourteenth Amendment right to due process by subjecting him to a facially vague licensing law contrary to 42 U.S.C. §1983.

**G.     Violation of Wash. Const. art. 1 Sec 7 by the Threatened Impoundment of a Vehicular Home.  (*Houser* and *Vilella*).
(Seventh cause of action)**

103.     By authorizing the impoundment of vehicles that homeless people like the plaintiff are living in for violation of LMC §10.14.020, and by threatening Plaintiff with such impoundment if he did not leave the Lacey municipal parking lot that he had been living in, the Defendants denied and continue to deny Plaintiff of his right to be free from the disturbance of his private affairs in violation of Washington Constitution, art. 1, §7.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 12

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

**H.    Violation of the Fourth Amendment Right to be
Free from Unreasonable Seizures.
(Eighth cause of action)**

104.    By authorizing the impoundment of vehicles that homeless people like the plaintiff are living in for violation of LMC §10.14.020, and by threatening Plaintiff with such impoundment if he did not leave the Lacey municipal parking lot that he had been living in, the Defendants, acting under color of state law, have denied and continue to deny Plaintiff of his Fourth Amendment right to be free from unreasonable seizures contrary to 42 U.S.C. §1983.

## VI.    RELIEF REQUESTED

Plaintiff hereby requests that the Court grant the following relief:

1.  Judgment against the defendant City of Lacey for general damages and special damages in amounts to be proved at trial.

2.  Declaratory judgment stating that the defendants violated plaintiff's federal and state constitutional rights.

3.  That the defendants be enjoined from enforcing LMC 10.14.020 and 10.13.045, and from impounding his home pursuant to LMC 10.14.010, .020, .030, .040, and .045.

4.  That plaintiff be awarded his costs and attorneys' fees as provided for by 42 U.S.C. §1988, and any other applicable provision of statutory and common law.

5.  That the Court grant such other relief as may be just and equitable.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 13

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

DATED this 27th day of August, 2020.

CARNEY BADLEY SPELLMAN, P.S.


By *s/James E. Lobsenz*
James E. Lobsenz, WSBA #8787
701 Fifth Avenue, Suite 3600
Seattle, WA 98104
lobsenz@carneylaw.com
Tel: (206) 622-8020
Fax: (206) 622-8983


NORTHWEST JUSTICE PROJECT


By *s/Carrie Graf*
Carrie Graf, WSBA # 51999
711 Capitol Way South, Suite 704
Olympia, WA 98501
Carrie.graf@nwjustice.org
Tel: (360) 753-3610
Fax: (360) 753-0174

Attorneys for Plaintiff

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 14

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# APPENDIX A

Lacey Municipal Code 10.14.020

**Restricted parking for commercial and recreational vehicles.**

A.  Commercial Vehicles. No person shall park any commercial vehicle, farm vehicle, or special mobile equipment upon the improved or unimproved portion of any street, alley, public right-of-way or publicly owned parking lot for more than four hours with the following exceptions:

1.  Such vehicles may be parked temporarily for the purpose of loading or unloading of the vehicle; and

2.  Such vehicles under ten thousand pounds gross weight may be parked overnight at the residence of the person responsible for the vehicle.

B.  Recreational Vehicles. No person shall park any recreational vehicle, motor home, mobile home, trailer, camper, vessel or boat upon the improved or unimproved portion of any street, alley, public right-of-way, or publicly owned parking lot for more than four hours with the following exceptions:

1.  Such vehicles may be parked temporarily for the purpose of loading or unloading of the vehicle; and

2.  Such vehicle has been issued a permit pursuant to LMC 10.14.045 and said permit is affixed to the front window of the vehicle in a place clearly visible from the outside of the vehicle.

C.  Parking a commercial or recreational vehicle in another location within the city upon the improved or unimproved portion of any street, alley, public right-of-way or publicly owned parking lot within any twenty-four-hour period is a violation of this section.

D.  This section shall not apply to vehicles owned by the city, its agents, or assigns.

E.  In no event shall power cords, extension cords, garden hoses, or other like devices be run from any vehicle across the public right-of-way or sidewalk to a residential dwelling or like source. (Ord. 1551 §2, 2019; Ord. 1440 §4 (part), 2014).

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 15

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# APPENDIX B

Lacey Municipal Code 10.14.040

**Violation – Fine – Vehicle Impoundment**

The violation of any of the provisions of this chapter shall constitute a parking infraction, with a monetary penalty not exceeding $450.00.  Violations of the provisions of 10.14.010 through 10.14.030 of this chapter shall have a monetary penalty of $35.00.  In addition to the issuance of a notice of infraction, a police officer may order the impoundment or removal to a place of safety of any vehicle found in violation of the provisions of this chapter.  For purposes of this chapter, a "place of safety" includes the business location of a registered towing operator.  Notice of the removal or impoundment of a vehicle shall be given in accordance with RCW 46.55.110 or as the same may hereafter be amended.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND DECLARATORY JUDGMENT – 16

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# APPENDIX C

Lacey Municipal Code 10.14.045

**City Manager authorization**

The City manager or designee is authorized to permit vehicles to park in excess of the time periods designated in this chapter pursuant to policies and procedures as may be developed by the City Manager.

COMPLAINT FOR DAMAGES,  INJUNCTIVE RELIEF, AND
DECLARATORY JUDGMENT – 17

POT011-0001 6113818

**CARNEY BADLEY SPELLMAN, P.S.**
701 Fifth Avenue, Suite 3600
Seattle, WA 98104-7010
(206) 622-8020

# APPENDIX D

## TEMPORARY PARKING PERMIT

### POLICIES AND PROCEDURES

CITY MANAGER'S OFFICE
420 COLLEGE STREET SE
LACEY, WASHINGTON 98503

## Purpose

Chapter 10.14 of the Lacey Municipal Code (Code) regulates parking upon the improved or unimproved portion of any public street, highway, alley, right-of-way, or public owned parking lot. Section 10.14.045 authorizes the City Manager to permit vehicles to park in excess of the time periods prescribed by Code pursuant to policy. This document identifies those limited and specific exceptions to the parking standards set forth in Chapter 10.14.

## Definitions

1. Recreational Vehicle: Motor home, mobile home, trailer, or camper.
2. Non-Resident: Individual without a permanent address.
3. City Right-of-Way: Any improved or unimproved portion of any public street, highway, alley, or publicly owned parking lot.
4. Actively Engaged with Social Services: Those persons confirmed to be working with Thurston County-based social service providers to seek permanent housing.

## Policy

It is the policy of the City of Lacey to authorize recreational vehicles, by permit only, to park in excess of the time periods prescribed by Chapter 10.14 – Parking. The policy recognizes permitted parking for limited but specific purposes is necessary to provide flexibility to the driving public and visitors to the City of Lacey.

**Resident Vehicle Permit**

A Lacey homeowner or renter may request a temporary parking permit for relatives or friends visiting Lacey. The issued permit will be valid within residential zones for a properly registered recreational vehicle. The vehicle obtaining the permit must be legally parked within 150 feet of the property of the Lacey resident. The temporary parking permit allows up to 48 consecutive hours on City streets provided that no driveway or entrance is blocked and no clear-vision hazards are created by the location of the vehicle. Permits do not allow electrical cords, hoses, awnings, slide-outs, or other accessories extending from the vehicle in question. No items may be removed from the vehicle and placed in the City right-of-way.

A Lacey homeowner or renter may request no more than four (4) temporary parking permits per year. Additionally, no vehicle is eligible for more than four (4) temporary parking permits per year. Only one (1) permit will be issued to a Lacey homeowner or renter at a time. Requests for temporary parking permits may be made through the Police Department.

In order to obtain a temporary parking permit for a relative or friend visiting, a Lacey resident must provide the following:

- Proof of residency.
- License plate number of the recreational vehicle receiving the permit.
- Address or location where the vehicle will be parked.

All recreational vehicles visiting Lacey must meet all standards and requirements to legally operate on City right-of-ways.

Once a temporary parking permit is issued, it must be displayed clearly from the front window of the vehicle. If the tow vehicle is disconnected from the trailer, the permit must be clearly placed in a roadside window of the trailer. Please note, truck-mounted campers must remain connected to a vehicle at all times.

Violation of this policy will invalidate the issued permit and may render permittees and vehicles subject to the penalties outlined in LMC Section 10.14.040.

**Non-Resident Vehicle Permit**

A recreational vehicle operated by a non-resident who is actively engaged with social services may be eligible to receive a temporary parking permit in a designated permitted parking area. These permits will only be issued by the Lacey Police Department.

To be eligible for a temporary parking permit, an individual must be actively engaged in social services and must have proof of the following:

- Valid government issued identification.
- Valid vehicle insurance.
- Valid vehicle registration.

At the time the permit is issued, the driver of the vehicle must disclose all other occupants of the vehicle. The Lacey Police Department will conduct a background check on the driver and all persons who occupy the vehicle for outstanding in-state and out-of-state warrants and registered sex offender status.

The Lacey Police Department may deny a permit if said background check reveals:
- Any occupant of the vehicle to have an existing or outstanding warrant from any jurisdiction in the United States.
- Any occupant of the vehicle to be a registered sex offender required to register with the County Sheriff or their county of residence pursuant to RCW 9A.44.130.

In order to receive a permit, the vehicle must meet all standards and requirements to legally operate on City right-of-ways.

The issued permit will only be valid within designated areas of the City for the period indicated on the permit not to exceed 12 hours per day. Designated areas will be set up in such a manner to preserve public sanitation and public security. Designated areas are identified in 'Exhibit A', attached hereto.

Once a permit is issued, it must be displayed clearly from the front window of the vehicle. Campers and trailers must remain connected to a vehicle at all times unless otherwise authorized. Permits do not allow electrical cords, hoses, awnings, slide-outs, or other accessories extending from the vehicle in question. No items may be removed from the vehicle and placed in the City right-of-way. No visitors are allowed to enter the designated parking area.

Violation of this policy will invalidate the issued permit and may render permittees and vehicles subject to the penalties outlined in LMC Section 10.14.040.

### Permitted Parking at the RAC, Rainier Vista Community Park, and Lacey Community Center

Individuals organizing or managing an event at the RAC, Rainier Vista Community Park, or the Lacey Community Center may request a temporary parking permit to be used at the respective location. Individuals attending or participating in events at the RAC or Rainier Vista Community Park may request a temporary parking permit to be used at the respective location. These events must be coordinated through the Lacey Parks and Recreation Department. The individual making the request must provide the following:

- Driver's License.
- License plate number of the recreational vehicle receiving the permit.
- Event organizers or event managers must provide documentation of the event they are organizing or managing that demonstrates their role in the event.

Upon review of the request, the Lacey Parks and Recreation Department may issue a temporary parking permit for use at the RAC, Rainier Vista Community Park, or the Lacey Community Center. A temporary parking permit allows up to 48 consecutive hours at the respective location provided that vehicles are legally parked.

If issued, a temporary parking permit must be displayed clearly from the front window of the vehicle. If the tow vehicle is disconnected from the trailer, the permit must be clearly placed in a roadside window of the trailer. Please note, truck-mounted campers must remain connected to a vehicle at all times.

Basic utility hookups are allowed only where available. No items may be removed from the vehicle and placed in the City right-of-way.

Violation of this policy will invalidate the issued permit and may render permittees and vehicles subject to the penalties outlined in LMC Section 10.14.040.

Any event organized by the City of Lacey requiring the use of a City of Lacey parking lot does not require the use of permits for extended parking.

Entered this 27ᵗʰ day of _September_ 20 19 .



_____
Scott Spence
Lacey City Manager

Original document shall be retained in the City Clerk's Office.

**Exhibit A**

<u>Designated Permitted Parking Area:</u> Overflow Library Parking Lot

<u>Address:</u> 420 College Street SE, Lacey, WA 98503

<u>Number of Stalls:</u> Up to 30

<u>Sanitation Facilities:</u>

- One (1) 2-yard dumpster with daily week-day service.
- Three (3) portable toilets—two (2) standard, one (1) ADA.

<u>Security:</u>

- Four (4) temporary security cameras.
- Adjacent to the Lacey Police Department.

