UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JACK POTTER,<br><br>                              Plaintiff,<br>   v.<br><br>CITY OF LACEY and KEN SEMKO,<br><br>                             Defendants. | CASE NO. 3:20-5925 RJB<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 8) and Plaintiff's Motion for Summary Judgment (Dkt. 16). Plaintiff, who lives in a travel trailer attached to his truck, challenges two provisions of the Lacey Municipal Code ("LMC"). He argues that they violate both the federal and Washington State constitutions and sues for both damages and injunctive relief pursuant to 42 U.S.C. 1983.

The Court has considered both parties' motions for summary judgment, the pleadings and declarations filed in support of and in opposition to both motions, and the file herein.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A.  FACTS

The parties do not dispute the facts relevant to this matter. Plaintiff, Jack Potter, lived in Lacey from 1997 until October 2019. Dkt. 18. He began living in his vehicle in April 2018. *Id.* Mr. Potter lives in a 23-foot unmotorized trailer attached to his Chevy Tahoe. *Id.* After moving around parking lots in Lacey unable to find a consistent place to park, Mr. Potter began parking in the Lacey City Hall parking lot along with about two dozen other vehicle-sheltered individuals. *Id.*

In September 2019, the Lacey City Council passed Ordinance 1551, which became LMC 10.14.020. Dkt. 16. LMC 10.14.020 states, in relevant part:

> B. *Recreational Vehicles*. No person shall park any recreational vehicle, motor home, mobile home, trailer, camper, vessel or boat upon the improved or unimproved potion of any street, alley, public right-of-way, or publicly owned parking lot for more than four hours with the following exceptions:
>     1. Such vehicles may be parked temporarily for the purpose of loading or unloading of the vehicle; and
>     2. Such vehicle has been issued a permit pursuant to LMC 10.14.045 and said permit is affixed to the front window of the vehicle in a place clearly visible from the outside of the vehicle.

LMC 10.14.045 authorizes the city manager or designee "to permit vehicles to park in excess of the time periods designated in this chapter pursuant to policies and procedures as may be developed by the city manager." The relevant policies and procedures are the Temporary Parking Permit, Policies and Procedures ("TPPPP"). Dkt. 17, Ex. 3. The TPPPP authorizes both "Resident" and "Non-Resident" vehicle permits. A "Resident Vehicle Permit" allows "[a] Lacey homeowner or renter [to] request a temporary parking permit for relatives or friends visiting Lacey" to stay parked for up to 48 hours. *Id.*

The conditions for a "Non-Resident Vehicle Permit" are as follows:

> A recreational vehicle operated by a non-resident who is actively engaged with social services may be eligible to receive a temporary parking permit in a designated permitted parking area. These permits will only be issued by the Lacey Police Department.
> To be eligible for a temporary parking permit, an individual must be actively engaged in social services and must have proof of the following:
>
> - Valid government issued identification.
> - Valid vehicle insurance.
> - Valid vehicle registration.
>
> At the time the permit is issued, the driver of the vehicle must disclose all other occupants of the vehicle. The Lacey Police Department will conduct a background check on the driver and all persons who occupy the vehicle for outstanding in-state and out-of-state warrants and registered sex offender status.
>
> The Lacey Police Department may deny a permit if said background check reveals:
>
> - Any occupant of the vehicle to have an existing or outstanding warrant from any jurisdiction in the United States.
> - Any occupant of the vehicle to be a registered sex offender required to register with the County Sheriff or their county of residence pursuant to RCW 9A.44.130.
>
> . . .
>
> The issued permit will only be valid within designated areas of the City for the period indicated on the permit not to exceed 12 hours per day. Designated areas will be set up in such a manner to preserve public sanitation and public security.
>
> . . .
>
> Once a permit is issued, it must be displayed clearly from the front window of the vehicle. Campers and trailers must remain connected to a vehicle at all times unless otherwise authorized. Permits do not allow electrical cords, hoses, awnings, side-outs, or other accessories extending from the vehicle in question. No items may be removed from the vehicle and placed in the City right-of-way. No visitors are allowed to enter the designated parking area.

*Id.* at 18–19. Mr. Potter is a registered sex offender and had an outstanding warrant in 2019. Dkt. 16 at 5.

Pursuant to LCM 10.14.040, violation of LMC 10.14.020 is punishable by a fine of $35 and "a police officer may order the impoundment or removal to a place of safety. . . ."

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

1    On September 27, 2019, a Lacey police officer told Mr. Potter and the other vehicle-sheltered people at the City Hall parking lot that they had to move by September 30, 2019 or they would be ticketed. Dkt. 18. Mr. Potter asserts that he did not move his vehicle because he did not know where else to go and because he had a doctor's appointment to monitor his pacemaker on October 2, 2019. *Id.* According to Mr. Potter's, the VA hospital does not have space for his vehicle in its lot, so he wanted to remain nearby. *Id.*

Mr. Potter alleges that on September 30, 2019, a Lacey Police officer returned to the City Hall parking lot, issued him a citation for violating LMC 10.14.020, and told him that he needed to leave or his vehicle would be impounded. Dkt. 18 at 9. Mr. Potter did not leave and on October 1, 2019, Lacey police allegedly returned to the parking lot with a tow truck and told him that his vehicle would be towed unless he left. *Id.* Mr. Potter asserts that he left because he would not be able to afford to redeem his vehicle if it were impounded but has been unable to find a consistent place to stay since leaving. Dkt. 16.

The Lacey City Council was aware that LMC 10.14.020 would have an impact on vehicle-sheltered people and discussed creating a "safe lot" in a different location. Dkt. 17. The safe lot does not appear to have come to fruition. Dkt. 16.

**B. PENDING MOTIONS**

This order responds to two motions for summary judgment: one from Defendants (Dkt. 8) and one from Plaintiff (Dkt. 16). Both parties seek summary judgment on each of Plaintiff's claims, which as a whole challenge LMC 10.14.020 and the non-resident parking permit authorized by LMC 10.14.045. Dkt. 16.

Plaintiff asserts LMC 10.14.020 is unconstitutional in three ways. First, Plaintiff claims LMC 10.14.020 violates the federal and state constitutional rights to freedom of travel. Dkt. 16 at 2. Second, he claims that it violates federal and state constitutional rights to be free from cruel

punishment. *Id.* Third, he claims that "*as applied to the vehicle-sheltered homeless*, the Lacey four hour parking law also violates the Fourth Amendment and Wash. Const. art 1, §7." *Id.* (emphasis added).

As for the non-resident parking permit, which is authorized by LMC 10.14.045, Plaintiff asserts that it is unconstitutional in two ways. First, that it violates state and federal freedoms of association because it prohibits users of a non-resident permit from having any visitors. *Id.* Second, that it unconstitutionally grants unbridled discretion to the Lacey Police Department to deny a permit application. *Id.*

Plaintiff seeks both damages and injunctive relief and brings his claims for injunctive relief against both the City of Lacey and Ken Semko, the retired City of Lacey Chief of Police, in his official capacity only. *Id.*

Defendants' motion for summary judgment seeks dismissal of all claims and moves to dismiss Ken Semko as a defendant. Dkt. 8. Plaintiff responded in opposition and, in addition, makes its own for summary judgment on all claims. Dkt. 16. Defendants replied (Dkt. 23), as did Plaintiff (Dkt. 25).

The Court will discuss the motions by claim and in the following order: standing, the Fourth Amendment and Wash. Const. art. 1, § 7; the right to travel; cruel and unusual punishment, and finally; whether Ken Semko is a proper defendant.

## II.     DISCUSSION

### A.     SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888-89 (1990).

**B.     STANDING**

Plaintiff has standing to claim both retrospective damages and a prospective injunction in his challenge to LMC 10.14.020. However, he lacks standing to challenge the non-resident parking permit.

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

**1.     LMC 10.14.020**

In his claim for damages, Plaintiff has standing because his alleged harm, being issued a citation and leaving Lacey under threat of impoundment, is concrete and particularized. The

citation and threat of impoundment are actual injuries that were issued pursuant to, and are therefore traceable to, LMC 10.14.020. Monetary damages would redress this past injury. The parties' primary dispute, however, is over whether Plaintiff has standing to seek injunctive relief.

Defendants argue that Plaintiff does not have standing for injunctive relief, first, because he faces no immediate threat of enforcement, second, because he mischaracterizes LMC 10.14.02 as prohibiting him from *living* in Lacey, and, third, because LMC 10.14.020 does not impose criminal penalties. Dkt. 23 at 3–4.

In a claim for prospective relief, the plaintiff must demonstrate an immediate risk of future harm absent an injunction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983). "As in all standing inquiries, the critical question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction." *Gonzalez v. United States Immigration and Customs Enforcement*, 975 F.3d 788, 803 (9th Cir. 2020) (internal quotation omitted). The purpose of the injury requirement "is to ensure that the alleged injury is not too speculative for Article III purposes," not to force a plaintiff to be prosecuted to the full extent of a law before it can be challenged. *See Martin v. City of Boise*, 902 F.3d 1031, 1040 (9th Cir. 2018) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

LMC 10.14.020 remains in effect and authorizes a fine and impoundment if a vehicle trailer, like Plaintiff's, remains parked in Lacey for more than four hours. Plaintiff declares that he would like to return to Lacey, where he has lived for more than 20 years, and stay parked for more than four hours. Nothing suggests that LMC 10.14.020 would not be enforced should he return. Plaintiff, therefore, establishes a concrete risk of injury should he return to Lacey, as he would without risk of enforcement of LMC 10.14.020.

Defendants' argument that that Plaintiff lacks standing because he mischaracterizes LMC 10.14.020 also fails.  This argument implies that Plaintiff lacks standing because he can change his behavior to simply comply with the statute, but that is not the proper inquiry for standing.  For example, the parties discuss *Clark v. City of Lakewood*. 259 F.3d 996 (9th Cir. 2001).  In *Clark*, the plaintiff operated an adult cabaret, which he closed after the City of Lakewood passed an ordinance that regulated adult cabarets and set requirements like licenses, hours of operation, and minimum distances between patron and entertainer. *Id.*  Though the plaintiff closed his business, he declared his "intent to reopen" if he could continue operating it as he had. *Id.* at 1008.  The Ninth Circuit found that the injury occurred because the ordinance remained in effect and the threat of enforcement prevented the plaintiff from running his business as he had. *Id.*

The same is true here.  Though Mr. Potter could theoretically live in Lacey in some other capacity, he declares that without the LMC 10.14.020 and the risk of its enforcement, he would return to Lacey to live as he has been, in his vehicle trailer. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992).

Finally, Defendants' argument that Plaintiff lacks standing because LMC 10.14.020 does not provide criminal penalties also fails.  While a plaintiff must establish *injury*, injury is not narrowly limited to harm from criminal prosecution. *See Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 625–26, n. 1 (1986).

Plaintiff, therefore, has standing to claim both damages and injunctive relief against LMC 10.14.020.

**2. Non-resident Parking Permit Authorized by 10.14.045**

Plaintiff does not have standing to challenge the non-resident parking permit because he does not establish injury-in-fact.

Plaintiff argues that the non-resident parking permit gives Lacey Police "unbridled" discretion to grant or deny a permit application and that the non-resident parking permit violates constitutional freedom of association. Dkt. 16 at 15. Both are First Amendment based claims. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988) (discussing doctrine of unbridled discretion); *Roberts v. United States Jaycees*, 468 U.S. 609 (1984) (discussing freedom of association).

"A plaintiff has standing to vindicate his First Amendment rights through a facial challenge when he 'argues that an ordinance . . . impermissibly restricts a protected activity[.]" *Real v. City of Long Beach*, 852 F.3d 929, 933 (9th Cir. 2017). Facial challenges are appropriate in this context because such a law risks chilling First Amendment freedoms, *see California Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001), and "the difficulties of proof in the case-by-case nature of 'as-applied' challenges" that would otherwise make review elusive, *Real*, 852 F.3d at 933.

An ordinance that regulates First Amendment activity, however, does not automatically vest standing to any plaintiff. *See Los Angeles Police Dept. v. United Rep. Pub.*, 528 U.S. 32, (1999) (prohibiting facial challenge brought on behalf of those not under threat of prosecution). A plaintiff must still establish Article III injury. *See Real*, 852 F.3d at 934. "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, (2014) (quoting *Babbitt*, 442 U.S. at 298).

Plaintiff makes clear that never intended to apply for a non-resident parking permit. Dkt. 16 at 38. He states, "[i]n his view even if he were allowed to park for up to 12 hours a day . . . that would not be constitutionally adequate because application of the law to him would still

violate his constitutional rights to freedom of travel and to be free from cruel and unusual punishment." *Id.*  He also states that he did not intend to apply for a non-resident permit because "he believed it would be futile" because he had an outstanding warrant.  *Id.*  While the policy allows the Lacey Police to deny a permit because of an outstanding warrant, it does not require it.  Dkt. 17, Ex. 3 (stating the police "*may*" deny a permit because of an outstanding warrant).  Therefore, it is not clear that applying would have been futile.  Furthermore, the ordinance does not regulate First Amendment activity of the general public.  Plaintiff never intended to apply for the permit, so he does not fall into the class of people whose First Amendment activity the ordinance would arguably chill, which would be intended non-resident parking permit holders.  Plaintiff, therefore, does not demonstrate injury-in-fact and his claim against the non-resident parking permit should be dismissed.

### C.   FOURTH AMENDMENT AND WASH. STATE ART. 1, § 7

Both Plaintiff's claim for damages and for injunctive relief based on the Fourth Amendment and the Washington State Constitution, art. 1, § 7 should be dismissed. The Fourth Amendment protects against unreasonable searches and seizures.  *Katz v. United States*, 389 U.S. 347, 353 (1967).  A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.'"  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027 (9th Cir. 2012) (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)).  To be reasonable, a seizure must be justified warrant based on probable cause or an exception to the warrant requirement, such as community caretaking or exigent circumstances. *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1134 (9th Cir. 2019).  Reasonableness depends on the "totality of the circumstances" and courts consider "whatever specific factors may be appropriate in a particular case."  *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010).

Plaintiff's claims for damages should be dismissed because he does not allege a "seizure" took place. Instead, he argues that had a seizure occurred on October 1, 2019, it would have been unconstitutional because the police neither had a warrant, nor were there exigent circumstances. Dkt. 16 at 36. This argument fails because it is hypothetical.

Plaintiff argues injunctive relief as-applied to vehicle sheltered homeless people is appropriate because "[s]eizures of a person's only shelter, because it has been parked 'too long' in one spot, *are per se unreasonable*." Dkt. 16 at 36. This argument also fails. While an ordinance may be facially invalid because it attempts to circumvent the Fourth Amendment, LMC 10.14.020 does not do that. *See City of Los Angeles v. Patel*, 576 U.S. 409 (2015) (invalidating ordinance that gave police authority to take information without a warrant).

LMC 10.14.020 does not legislate or condone a standard below what is required by the Fourth Amendment. While seizure of a vehicle that is also a person's only shelter is an extreme remedy, it may be "reasonable" based on the totality of the circumstances such as, for example, a vehicle that threatens public health or safety. The reasonableness of any such seizure, including the seizure of a vehicle of vehicle-sheltered homeless person, may be constitutional, and LMC 10.14.020 does not permit a standard below what is constitutionally permissible. Therefore, injunctive relief barring all such seizures is not appropriate. While Wash. Const. art. 1, § 7 is not identical to the Fourth Amendment, it follows these same basic principles. *See State v. Flores*, 186 Wn.2d 506, 511–12 (2016) (discussing Wash. Const. art 1, § 7).

Accordingly, Defendants' motion for summary judgment on the Fourth Amendment and Wash. Const. art. 1, § 7 based claims should be granted, and Plaintiff's motion should be denied.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, IN PART, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

D. **CONSTITUTIONAL RIGHT TO TRAVEL**

Plaintiff argues that LMC 10.14.020 violates the right to travel protected by the Fourteenth Amendment and Washington State Constitution.

"The word 'travel' is not found in the text of the Constitution. Yet the constitutional right to travel from one state to another is firmly imbedded in our jurisprudence." *Saenz v. Roe*, 526 U.S. 489, 498 (1999) (internal quotation omitted). "A state law implicates the right to travel when it actually deters such travel, when impeding travel is the primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Id.* (quoting *Atty Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986)).

Plaintiff analogizes LMC 10.14.020 to unconstitutional laws intended to deter indigent people from moving to certain areas by denying services to residents who recently moved to the area, Dkt. 16 at 11–12 (citing *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974)), and to banishment or exclusion laws, which prohibit a person from entering an area at all, Dkt. 16 at 29 (citing *State v. Sims*, 171 Wn.2d 436, 440 (2011)).

LMC 10.14.020, however, does not fundamentally impede the right to exist or reside in a given area. It is a parking ordinance that is applicable to all people in Lacey, resident or not, and only by extension does it restrict the *manner* in which a person can live in Lacey. The right to travel does not, however, include a right to live in a certain manner. It is, therefore, inapplicable.

Defendants' motion for summary judgment on the issue of the constitutional right to travel should be granted, and Plaintiff's motion should be denied.

E. **CRUEL AND UNUSUAL PUNISHMENT**

Plaintiff asserts that LMC 10.14.020 violates the Eighth Amendment and the Washington State Constitution art. 1, § 14 because it is cruel and unusual punishment and an excessive fine. Dkt. 16 at 32.

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." The Eighth Amendment limits the government's ability "punish," regardless of whether the punishment is criminal or civil in nature. *See Austin v. United States*, 509 U.S. 602, 610 (1993). Especially in civil proceedings, a sanction may serve both a remedial and punitive purpose. *Id.* Punishment, however, cannot be "grossly disproportional to the underlying offense. . . ." *See Pimental v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (finding $67 parking fine not grossly disproportionate).

Pursuant to Western District of Washington Local Civil Rule 7, the Court requests that the parties supply additional briefing to determine whether they are claiming that the fine and impoundment constitute punishment. The parties may also address whether, if punishment, it would be cruel and unusual punishment. The additional briefing must not exceed three pages per party and must be submitted on or before February 19, 2021.

### F.   CLAIMS AGAINST DEFENDANT KEN SEMKO

Defendants' motion to dismiss Defendant Semko from this matter should be granted.

Plaintiff includes Defendant Semko, as the Chief of Police, in his official capacity in the claims for injunctive relief. Dkt. 16 at 44. Plaintiff argues that he is a proper defendant because "[a]n official-capacity suit for injunctive relief is properly brought against any person who 'would be responsible for implementing any injunctive relief.'" Dkt. 25 at 12 (citing *Edmo v. Corizon*, 935 F.3d 757, 799 (9th Cir. 2019)). The cases cited by Plaintiff, however, are against state actors where the Eleventh Amendment prohibits directly suing the state. *See Edmo*, 935 F.3d 757; *Pouncil v. Tilton*, 704 F.3d 568 (9th Cir. 2012). Defendant is correct that in a case like this, where the defendant is a city and therefore not immune under the Eleventh Amendment, an official capacity suit is redundant. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).

Therefore, Defendants' motion on this issue should be granted and Mr. Semko should be dismissed as a defendant.

### III.   CONCLUSION

The Court requests that each party submit additional briefing on the claim of cruel and unusual punishment not to exceed three pages. Defendants' motion for summary judgment should be granted with respect to all other claims. Plaintiff's motion for summary judgment should be denied.

### IV.   ORDER

Therefore, it is hereby **ORDERED** that:

- Defendants' Motion for Summary Judgment (Dkt. 8) **IS GRANTED, IN PART**;
- Plaintiff's Motion for Summary Judgment (Dkt. 16) **IS DENIED**;
- Additional briefing on the issue of cruel and unusual punishment must not exceed three pages and must be filed on or before February 19, 2021;
- All claims except for the claim for injunctive relief based on cruel and unusual punishment **ARE DISMISSED**;
- Ken Semko **IS DISMISSED** from this matter.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 5th day of February, 2021.

ROBERT J. BRYAN
United States District Judge